IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROY LOGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-1165-N |
| | § | |
| DALLAS COUNTY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This Order addresses Plaintiff Roy Logan's motion for partial summary judgment [9] and Defendant Dallas County's (the "County") motion for summary judgment [16]. Because Logan cannot show that his speech caused his termination, the Court grants the County's motion on Logan's claims for violation of his First Amendment rights or the Texas Whistleblower statute in connection with his termination. The Court denies the County's motion on Logan's other claims of retaliation against him because of his protected speech. Because Logan had no vested or fundamental right to participate in the terminated Dallas County civil service plan, the Court grants the County's motion on Logan's claims for violating of equal protection and Texas Government Code § 617.005.

**I. DALLAS COUNTY'S CONSTABLE PROBLEMS**

Logan began his employment as a Dallas County deputy constable in 2008, under Constable Jaime Cortes, Precinct 5. Logan claims he became aware of irregular acts by his supervisors including Cortes. In or around 2009, issues regarding Cortes and Constable

ORDER – PAGE 1

Evans rose to the attention of the Dallas County Commissioners Court, the legislative body for Dallas County.[1] It engaged a former FBI agent, Danny Defenbaugh, to investigate. At various times from late 2009 up through around February 2010, Logan reported his allegations to County Judge Foster – the chief executive officer of Dallas County and a member of the Commissioners Court, not a traditional judicial officer – and Defenbaugh's investigators.

The investigators' report became public around February 2010. After it became public Commissioner Price allegedly made threats of retaliation against whistleblowing deputy constables such as Logan. On April 12, 2010, Logan was suspended for 3 days without pay. Logan submitted grievances to both Constable Cortes and the Dallas County human resources department. Cortes did nothing and Dallas County declined to address Logan's grievances under its civil service system, which was limited to Deputy Constables hired before 2003. In September 2010, Dallas County terminated Logan's employment, allegedly pursuant to a reduction in force. Logan again grieved that termination both to Cortes and to Dallas County. Again, there was no response or hearing.

Logan brought this action in state court under the Texas Whistleblower Act, *see* TEX. GOV'T CODE ch. 554, after his first grievance was refused. The case had a complex history in state court. *See generally Dallas County v. Logan*, 420 S.W.3d 412 (Tex. App. – Dallas

---

[1]Evans was eventually convicted of a felony. Cortes resigned and, after a hung jury on a felony charge, agreed to one year deferred adjudication probation on a misdemeanor charge and agreed to relinquish his law enforcement license. Cortes apparently successfully completed his deferred adjudication.

2014, pet. denied) (*Logan III*). Following the remand from *Logan III*, Logan amended to assert federal claims. The County timely removed to this Court. Following the close of discovery, Logan has moved for partial summary judgment and the County has moved for summary judgment.

## II. LOGAN'S TERMINATION WAS NOT CAUSED BY HIS REPORTS

Logan claims that his termination violated both his First Amendment rights and the Texas Whistleblower Act, because his termination was in retaliation for reporting Cortes's misconduct. Causation is a requirement for both claims. *See Tex. Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) (Texas Whistleblower Act requires "that the employee's protected conduct must be such that without it, the employer's prohibited conduct would not have occurred when it did."); *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013) (prima facie case of First Amendment retaliation requires showing that speech motivated adverse employment decision). The Court acknowledges that summary judgment should be used sparingly in First Amendment cases, *Haverda*, 723 F.3d at 592, but believes this is one of those few cases where it is merited.

Logan's speech ended by February 2010. He was terminated some seven months later in September 2010.[2] The uncontested Mattye Mauldin-Taylor Affidavit establishes that Dallas County sustained a significant budget deficit in the summer of 2010. *See* Notice of Removal Ex. 7 at 59 (Mauldin-Taylor Aff. at 7) [1-7]. Consequently, Dallas County

---

[2]Thus the rebuttable presumption of causation in the Texas Whistleblower Act does not apply. *See* TEX. GOV'T CODE § 554.004(a) (causation is presumed if adverse action is within 90 days of speech).

implemented a reduction in force across twelve different departments, including all five constable precincts. *Id.* This included eighty Deputy Constable positions, such as Logan's. *Id.* at 60. The determination of which Deputy Constables were terminated was based strictly on tenure, or seniority. *Id.* Thus, Dallas County has affirmatively shown that Logan was terminated due to a reduction in force caused by a budget shortfall.[3]

Logan makes three responses. First he offers evidence that Commissioner Price stated that he would see that any cooperating Deputy Constables were fired, e.g., Logan MSJ App. at 10 (Foster Aff. at 3) [21]. Taking this at face value, it is irrelevant. The Commissioners Court is a legislative body, of which Commissioner Price is one member. The statements of a single member of a legislative body do not establish legislative intent. *See, e.g.*, *Consumer Prod. Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980); *AT&T Comms. of Texas, L.P{. v. Southwestern Bell Tel. Co.*, 186 S.W.3d 517, 528-29 (Tex. 2006). Thus, the statements of Commissioner Price do not raise a fact issue in the face of the Mauldin-Taylor Affidavit because they are irrelevant as to the intent of the Commissioners Court in adopting the reduction in force.

Logan also argues that an order by this Court in another case estops the County from arguing its reduction in force was the cause of Logan's termination. *See* Order, *Garcia v. Dallas County*, Civil Action No. 3:10-CV-2521-N (July 23, 2012) [13]. In that case the

---

[3]It does not appear particularly important to the Court whether this is viewed as negating an element of Logan's case – causation – or establishing that Dallas County would have terminated Logan in any event, i.e., a response to a prima facie case. The same result follows.

Court held that by removing civil service protection from Deputy Constables, the County effectively delegated policymaking authority to the Constables. The Court remains of the opinion that the County cannot dictate personnel decisions regarding the Deputy Constables, or the hiring or firing of particular Deputy Constables. That is a very different proposition from the one in play here, where the County, in the exercise of its budgetary authority, eliminated numerous positions as part of a reduction in force. The Court finds no inconsistency between its holding in *Garcia* and the County's position in this case.

Finally, Logan argues that in other similar cases, the individual Commissioners and the County Judge have successfully opposed giving depositions based upon legislative privilege. Logan essentially argues that the County should not be permitted to offer evidence of a reduction in force and then shield the Commissioners and County Judge from depositions testing that theory with the legislative privilege. There are two problems with that argument. First, Logan has not attempted to depose the Commissioners or County Judge in this case and there has been no assertion by them of the legislative privilege. Second, Logan offers no case law in support of his estoppel theory. Even if the legislative privilege were invoked here, there would be nothing stopping Logan from deposing the County's affiant, Ms. Mauldin-Taylor. The Court sees no basis for disregarding her affidavit and declines to do so.

On this summary judgment record, then, it is undisputed that Logan was terminated as part of a reduction in force caused by a budget shortfall. Logan thus fails to raise a fact issue that his termination was causally related to his speech. The County is thus entitled to

summary judgment on Logan's Texas Whistleblower Act and First Amendment claims relating to his termination.

### III. ELIMINATING CIVIL SERVICE PROTECTION FOR DEPUTY CONSTABLES DID NOT VIOLATE LOGAN'S RIGHTS

On August 19, 2003, Dallas County eliminated Deputy Constables hired after that date from civil service. This was perhaps in response to a $2.1 million judgment against the County for violating civil service procedures in terminating some deputies. *See Garcia, supra*, at 10-11. Logan was hired long after that effective date, so he was not deprived of any civil service protection he had previously enjoyed. He nonetheless argues that dividing Deputy Constables into two classes – (1) those hired before August 19, 2003, who have civil service protection and (2) those hired after August 19, 2003, who do not – violates his constitutional and statutory rights. The Court holds that Logan does not have a constitutional or statutory right to civil service protection and grants Dallas County's motion for summary judgment on those claims.

As this Court observed in *Garcia*:

> Dallas County has an interesting history with deputy constables, civil service, and litigation.
>
> > Historically, civil service systems in Texas did not apply to employees who performed governmental functions in their own right. For precisely that reason, Dallas trial and appellate courts dismissed a civil service claim in the late 1980s by a Dallas County deputy constable, Floyd Arrington. [*Arrington v. Cty. of Dallas*, 792 S.W.2d 468, 471 (Tex. App. – Dallas 1990, writ denied).]
>
> > In response to that case, Dallas legislators introduced a bill whose express purpose was to grant civil service protection

to deputy constables. Dallas County officials appeared at committee hearings to support the bill. The bill passed, and became effective September 1, 1989. Dallas County Commissioners then amended their civil-service system to add deputy constables – the only employees specifically named by ordinance as protected employees.

In November 2000, Mike Dupree was elected Dallas County Constable, Precinct 6, defeating the incumbent constable in the Democratic primary and a Republican challenger in the general election. Before he took office, the constable-elect sent letters to deputy constables Stanley Gaines, James Gilliand, and Sonia Avina informing them they would not be reappointed in January. When they were denied a civil service hearing on this discharge, they filed suit.

*Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 362-63 (Tex. 2007) (Brister, J., concurring and dissenting) (footnotes omitted). On November 8, 2002, the district court in *Wiland* entered judgment in favor of the terminated deputies and against the County for approximately $2.1 million for violating civil service procedures in terminating the deputies. *See Cty. of Dallas v. Wiland*, 124 S.W.3d 390, 394 (Tex. App. – Dallas 2003), *aff'd in part and rev'd in part*, 216 S.W.3d 344 (Tex. 2007) (date of judgment); *see also Wiland*, 216 S.W.3d at 351 (amount of judgment). On August 19, 2003, while *Wiland* was on appeal before the Dallas Court of Appeals, the Dallas County Commissioners Court amended its policy manual again to exclude deputy constables from civil service. *See Wiland*, 216 S.W.3d at 362 n.1. One can speculate that this was in response to the $2.1 million *Wiland* judgment.

Eliminating civil service protection for deputy constables is more than a technicality. Perhaps stung by the $2.1 million judgment, Dallas County decided affording civil service protection to deputy constables was simply too expensive. Consequently, it abdicated that oversight role to the Constables, the proverbial fox now guarding the henhouse. By excluding deputy constables from the civil service system, deputy constables do not get civil service review of promotions, seniority, tenure, layoffs and dismissals, disciplinary actions, benefits, working conditions, or any other grievance they may have. *See* Dallas Cty., Tex., Code of Ordinances ch. 86, art. II, § 86-51 (2011). In other words, the County has affirmatively chosen to grant its constables free rein over deputy employment, unchecked by civil service review. In this case, that decision directly led to the Constables wielding their power in such a manner as to create an environment of fear and manipulation,

ORDER – PAGE 7

>facilitating, among other things, the violation of the Deputies' constitutional rights. Indeed, this delegation effectively granted to the Constables the unrivaled and unchecked authority to govern not only the day-to-day activities of the deputy constables, but also the rules and unwritten policies that generally regulate their employment, as well as the means to enforce those rules.

*Garcia, supra*, at 10-11.

Before addressing the specifics of Logan's arguments, two global points are worth noting. First, Dallas County never took anything away from Logan. He never had civil service protection; it was eliminated for Deputy Constables years before Logan began to work for Dallas County. Second, the implication of Logan's argument is that if a county ever offers civil service protection for any group of employees, it can never change its "mind" and retract that benefit. That would be a startling conclusion.

### A. Elimination of Civil Service Benefits Did Not Violate Equal Protection

Logan first argues that the elimination of civil service protection violates his equal protection rights because it impairs his right to petition under the First Amendment, which is a fundamental right. Again, Dallas County never took anything away from Logan; it never provided him with civil service benefits in the first place.

The Court has some difficulty ascertaining whether Logan intends to assert a straight up First Amendment (as applied to the states through the Fourteenth Amendment) claim,[4] or

---

[4]*See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 276-77 (1964).

an fundamental right/equal protection claim,[5] or an equal protection/suspect class claim,[6] or all of the above. The Court will attempt to keep those issues distinct.

Turning first to the traditional equal protection argument, the classification here is constables hired before or after August 19, 2003. Logan cites no authority that discriminating among employees based on date of employment is a suspect classification. The Court holds that it is not. Therefore rational basis scrutiny is appropriate. This requires that the classification be rationally related to a legitimate state interest. *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Here the Commissioners Court could rationally have decided that eliminating civil service protection on a going forward basis would reduce the exposure of the county taxpayers to expensive litigation over civil service rights and procedures. Thus the elimination of civil service protection for Deputy Constables hired after August 19, 2003 survives rational basis scrutiny.

Logan also at some points appears to make a straight up First Amendment claim, that he has a right to petition the county government and that denying him civil service rights takes away one avenue of petitioning the government. *See* U.S. CONST. amd. 1 ("Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances."). But Logan cites no authority for the proposition that the government has an affirmative duty to make available all possible avenues for petitioning the

---

[5]*See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438 (1972); Logan does not appear to make an argument under the fundamental right/due process variant.

[6]*See, e.g.*, *Brown v. Board of Education*, 347 U.S. 483 (1954).

government. Indeed, Logan acknowledges the Fifth Circuit's statement in *Prof. Ass'n of Col. Educators v. El Paso Cty. Comm. Col. Dist.*, 730 F.2d 258 (5th Cir. 1984) ("*P.A.C.E.*") that: "The Constitution does not require a public employer either to establish a grievance procedure or to respond to grievances lodged by its employees or their union." *Id.* at 263 (citing *Smith v. Arkansas State Hwy. Emps.*, 441 U.S. 463, 465 (1979)). Based on *P.A.C.E.*, the Court finds that not making the avenue of civil service grievances available to Logan, standing alone, does not violate his First Amendment right to petition the government.[7]

Finally, Logan appears to make an equal protection/fundamental rights variation on this argument: while Logan may not have a standalone right to civil service, the County is discriminating against him by permitting Deputy Constables hired before August 19, 2003 to petition the government through civil service grievances, but not those hired after that date; because the right to petition under the First Amendment is a fundamental right, that categorization is subject to strict scrutiny, which it cannot survive. In support of that argument, Logan relies on the sentence in *P.A.C.E.* immediately after the one previously quoted: "Nevertheless, if a public employer voluntarily establishes a grievance procedure, then discriminates or retaliates against union members in administering that process, it violates the first amendment." *Id.* The immediate problem with that argument is that the County did not exclude Logan from the civil service grievance process because he was a

---

[7]Indeed, Logan did petition by raising his claims with members of the Commissioners Court, his supervisor (Constable Cortes), and the County human resources department. Those avenues simply did not afford Logan the substantive relief he sought. Needless to say, the First Amendment right to petition does not carry with it a right to prevail.

member of a union.  The First Amendment right at issue in *P.A.C.E.* was the right of professors to associate with one another in a union.  *Id.* at 262.  That is not implicated here.  Logan cites no authority for the proposition that the right to petition through a civil service grievance process[8] is a fundamental right that triggers strict scrutiny.  The Court holds that it is not.  As discussed above, the withdrawal of civil service protection based on date of hire survives rational basis scrutiny.

The Court holds that the County is entitled to summary judgment on Logan's constitutional claims regarding civil service.

### B. The County Did Not Violate Texas Government Code § 617.005

Logan also argues that withdrawal of civil service protection for those hired after August 19, 2003 violated Texas Government Code § 617.005.  That section provides:

> This chapter does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.

Though not apparent in the text, Texas decisional law has held that implicit in the text "is the notion that public officials should meet with public employees or their representative at reasonable times and places to hear their grievances . . . ."  Tex. Att'y Gen. Op. No. H-422 (1974) (cited with approval in *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 135 (Tex. 2013)).  *Accord Mullinax v. Texarkana Indep. Sch. Dist.*, 2001 WL 422731, at *3 (5th Cir.

---

[8]As discussed above, *see supra* note 4, Logan retained and in fact exercised his right to petition, so the Court believes this is the correct formulation for the principal at issue.

2001) (unpub.) (citing *Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 707 (Tex. App. – Corpus Christi 1986, no writ)).

It appears that the Dallas County Commissioners Court is the only body that could rescind the reduction in force that resulted in Logan's termination. The Dallas County Code permits any person to register and appear before the Commissioners Court. *See* DALLAS CTY. CODE § 74-71(d), (e). There is no indication in the record that Logan ever requested to appear before the Commissioners Court or was ever refused permission to appear. Thus the record does not support any claim of violations of TEX. GOV'T CODE § 617.005.

In fact Logan has expressed no interest in appearing before the Commissioners Court. What he wants is for the Dallas County Civil Service Commission to hear his grievance and order his reinstatement. *See* Pltf.'s Amd. Br. in Supp. of M. for Part. Summ. J. at 23-24 [15]. But there is nothing in the text of section 617.005 or the decisional law regarding it that provides any such right. The Court thus grants the County's motion for summary judgment on Logan's claim under section 617.005

### IV. LOGAN'S SUSPENSION AND OTHER DISCIPLINE

Logan also complains that he was suspended without pay and suffered other disciplinary actions[9] in retaliation for his statements, in violation of his First Amendment rights and the Texas Whistleblower Act. The County's causation argument regarding termination does not reach those adverse actions. Although the County does not expressly

---

[9]The briefing was not explicit regarding the nature of the other disciplinary actions and the Court expresses no opinion regarding whether they are actionable adverse employment actions.

address those claims it does generally argue that Logan's whistleblower claims fail because Logan's statements were not to an appropriate law enforcement authority and because Logan lacked objective good faith.

The County's argument sidesteps the fact that the Commissioners Court has regulatory authority over the Constables. *See* TEX. GOV'T CODE § 554.002(b) ("a report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity . . . that the employee in good faith believes is authorized to: (1) regulate under . . . the law alleged to be violated . . . ."). The Commissioners Court retained Defenbaugh & Associates to investigate and report back to them so they could exercise their regulatory authority, if appropriate. This is materially different from making an internal report to someone with no authority to regulate or enforce, as in *Texas Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 615 (Tex. 2014). At minimum, it would appear to raise a fact issue regarding whether Logan had a good faith belief that he was reporting to an appropriate authority.

The Court therefore denies the County's motion with regard to Logan's First Amendment and whistleblower claims relating to suspension and other discipline.

## CONCLUSION

The Court grants Dallas County's motion for summary judgment on all claims except Logan's First Amendment and Texas Whistleblower Act claims relating to suspension and other discipline. The Court denies Logan's motion for partial summary judgment. The Court will, by separate Order, set the remaining claims for trial.

Signed June 7, 2017.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14